UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLEO POINDEXTER, #598640,

       Petitioner,

v.                                CASE NO. 2:09-CV-12021
                                 HONORABLE LAWRENCE P. ZATKOFF

CATHERINE BAUMAN,

       Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

**I.     Introduction**

Michigan prisoner Cleo Poindexter ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 challenging his Wayne County Circuit Court convictions on four counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and one count of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, for which he was sentenced to four concurrent terms of 10 ½ to 18 years imprisonment and a consecutive term of two years imprisonment. In his pleadings, Petitioner raises claims concerning the lack of a due diligence hearing for two missing witnesses and the effectiveness of trial counsel. Respondent has filed an answer to the petition contending that it should be denied. Having considered the matter, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and denies the petition. The Court also denies a certificate of appealability.

**II.     Facts and Procedural History**

Petitioner's convictions arise from a shooting which occurred at a nightclub in Detroit,

Michigan on August 1, 2005.  The Michigan Court of Appeals provided a factual summary of the case, which is presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 F. App'x 730 (6th Cir. 2002), as follows:

> This case arises out of a shooting that occurred at the Chicago Blues Lounge (Lounge) in Detroit, Michigan on August 1, 2005. Micah Wilson, Calvin Scott, Deshawn Cheatom, Latasha Peterson, and Brittany Peterson went to the Lounge to attend a party for high school kids. As they approached the Lounge, defendant was outside rapping and waiving money. Cheatom testified that he approached defendant and asked him if he was responsible for "shooting up" his house. Defendant responded that he was not, and Cheatom backed away and suggested to the others that they leave because he had noticed a gun in defendant's pocket. He stated that as the group turned to leave, defendant pulled out the gun and fired four to five shots. Scott testified that he was shot in the upper back. He did not see defendant with a gun, and he did not see who shot him. Wilson was shot in the stomach and identified defendant as the shooter.
>
> Terrance Turner was working security at the Lounge when the shooting occurred. Turner and his cousin left the Lounge to purchase cases of water for the bar. As they exited the Lounge, Turner testified that he saw defendant fire several shots in his direction into a group of people. He stated that he was 10 to 15 feet away from defendant at the time of the shooting.
>
> Derrius Dixson testified for the defense. Dixson testified that he was defendant's friend. He stated that he was sitting in his car on the corner next to the Lounge when he heard six shots fired. He never saw defendant at the Lounge. Dixson stated that he saw Wilson and Cheatom and a "gang of other guys" verbally confronting one another. He explained that Wilson and Cheatom were members of the Brightmoor Killers gang and the other group was composed of members from the Seven Mile gang. Dixson explained that the two groups continued to verbally spar until Wilson lifted up his shirt like he was going for a gun, and in retaliation, an individual from the Seven Mile group drew a gun and started firing.
>
> Defendant attempted to call Sergeant Dunbeck to testify as to his efforts in procuring Latasha Peterson and Brittany Peterson as witnesses, but the court instructed him to call another witness because Dunbeck was unavailable. As the officer standing in for Sergeant Dunbeck, Detroit Police Sergeant David Levalley testified that he failed to serve the Peterson girls because he was unable to locate them. He had no addresses for them, and Wilson and Scott told him that they had moved away and were unable to contact them. Additionally, Sergeant Levalley was unable to look up their driver's license information because he did not have their birth dates. He also stated that he was unsure what additional information Sergeant Dunbeck may have had concerning

>the witnesses. But as the officer-in-charge, Dunbeck was responsible for locating and serving the witnesses.
>
>Defendant was convicted of assault with intent to murder Wilson, Cheatom, Scott, and Turner. He was acquitted of the charges related to the shooting of Brittany and Latasha Peterson.

*People v. Poindexter*, No. 269915, 2007 WL 2847757, *1-2 (Mich. Ct. App. Oct. 2, 2007) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals essentially raising the same claims presented on habeas review. The Michigan Court of Appeals denied relief on Petitioner's claims and affirmed his convictions. *Id*. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Poindexter*, 480 Mich. 1076, 744 N.W.2d 167 (2008).

Petitioner thereafter instituted this federal habeas action, raising the following claims as grounds for relief:

> I. He was denied due process and the right to compulsory process when the trial court refused to require the prosecution to demonstrate the exercise of due diligence to produce endorsed, known res gestae witnesses who would have corroborated his defense that someone else was the shooter.
>
> II. Defense counsel was ineffective for failing to demand the witnesses' production, for failing to demand a due diligence hearing, for failing to seek assistance with locating the witnesses, and for failing to request a missing witness jury instruction.

Respondent has filed an answer to the petition contending that it should be denied because the first claim is barred by procedural default and the second claim lacks merit.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, governs this case because Petitioner filed his petition after the AEDPA's effective

date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court

4

decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, _ U.S. _, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give

5

reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

**IV.     Discussion**

    **A.     Due Diligence Claim**

Petitioner first asserts that he is entitled to habeas relief because the trial court did not require the prosecution to demonstrate that it had exercised due diligence in attempting to locate LaTasha and Brittany Peterson and secure their appearance at trial. Respondent contends that this claim is barred by procedural default.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72,

85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on this issue. In denying relief on this claim, the court relied upon the defense's failure to properly preserve this issue by requesting a due diligence hearing or a new trial. *See Poindexter*, 2007 WL 2847757 at *2. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Dixon*, 217 Mich. App. 400, 409, 552 N.W.2d 663 (1996); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542,

557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied relief on this claim based upon a procedural default – the failure to move for a due diligence hearing or a new trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Petitioner alleges ineffective assistance of trial counsel as cause to excuse his procedural default. As explained *infra*, however, Petitioner has not shown that counsel was constitutionally ineffective. He thus has failed to establish cause to excuse his procedural default. The Court need not address the issue of prejudice when a habeas petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983); *Bell v. Smith*, 114 F. Supp. 2d 633, 638 (E.D. Mich. 2000). Nonetheless, the Court finds that Petitioner cannot establish prejudice (or entitlement to habeas relief) as this claim lacks merit for the reasons stated by the Michigan Court of Appeals in reviewing the issue for plain

error. *See Poindexter*, 2007 WL 2847757 at *2-3.

Petitioner has also not shown that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

**B.     Ineffective Assistance of Counsel Claims**

Petitioner relatedly asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to demand the witnesses' production, for failing to demand a due diligence hearing, for failing to seek assistance in locating the witnesses, and for failing to request a missing witness jury instruction. Respondent contends that these claims lack merit.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id*. at 788.

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on these

10

claims, stating in relevant part:

> Defendant first argues that counsel should have requested a hearing under *People v. Pearson*, 404 Mich 698, 721; 273 NW2d 856 (1979), superseded by statute *People v. Cook*, 266 Mich App 290; 702 NW2d 613 (2005), where the trial court could have ordered the prosecution to produce the witnesses or to assist defendant in finding them. However, the *Pearson* hearing defendant refers to was based on the preamendment version of MCL 767.40a, where the prosecution was required to produce res gestae witnesses. *See Cook, supra* at 294-295. Under the postamendment statute, the prosecutor is only obligated to notify a defendant of all res gestae witnesses known to the prosecution and to provide defendant a list of witnesses that the prosecution intends to call at trial. *Id.; see also* MCL 767.40a(1) and (3). This Court held in *Cook* that *Pearson* hearings are no longer required since the statute no longer requires the prosecution to produce res gestae witnesses. *Cook, supra* at 295-296. Thus, counsel was not ineffective for failing to move for a *Pearson* hearing.
>
> Further, defense counsel did not err in failing to call Brittany and Latasha Peterson. The failure to call supporting witnesses can constitute ineffective assistance of counsel where the missing witness's testimony could have changed the outcome of the case or, in other words, where a defendant is deprived of a substantial defense. *People v. Bass*, 247 Mich App 385, 392; 636 NW2d 781 (2001). However, defense counsel did not fail to call Brittany and Latasha. Rather, the witnesses were endorsed witnesses, and therefore, the prosecution presumably intended to produce them. MCL 767.40a(3). Under MCL 767.40a(4), the prosecution can only strike a witness from its endorsed list by showing good cause. Thus, requiring defense counsel to produce witnesses on the prosecution's endorsed witness list is illogical, and counsel is not required to advocate meritless positions. *People v. Mack*, 265 Mich App 122, 130; 695 NW2d 342 (2005).
>
> Defendant also argues that his trial counsel was ineffective for failing to seek assistance with locating the witnesses. Under MCL 767.40a(5), the prosecution is obligated to provide reasonable assistance to the defense to locate witnesses the defense requests. *People v. Long*, 246 Mich App 582, 585-586; 633 NW2d 843 (2001). Here, the missing witnesses were not on defendant's witness list. However, they were endorsed on the prosecution's witness list. Therefore, defendant could presume that the prosecution intended to produce Brittany and Latasha. MCL 767.40a(3). In addition, defense counsel heard the prosecutor state at a pretrial motion hearing that he was having difficulty locating the two witnesses. The prosecutor's statement implies that efforts were being made to locate Brittany and Latasha. Thus, defense counsel's performance was not deficient.
>
> Defendant contends that his trial counsel was ineffective for not more firmly demanding an adjournment so that he could elicit Dunbeck's testimony. Defense

counsel first argued with the trial court regarding the importance of Dunbeck's testimony and then attempted to call Dunbeck as a witness. Defense counsel complained to the trial court that Dunbeck, who was returning in two days, should be produced so he could testify regarding the effort that was made to locate Brittany and Latasha. We find that defense counsel's efforts to have the trial adjourned were not deficient.

Defendant next claims that he was denied the effective assistance of counsel when his counsel failed to request a missing-witness jury instruction, CJI2d 5.12. Defendant asserts that the trial court would have determined that the witnesses' absence at trial was prejudicial to defendant, and therefore, defendant would have been entitled to a jury instruction stating that it could infer that the missing witnesses' testimony would have been unfavorable to the prosecution. However, a missing-witness jury instruction is appropriate upon a court's determination that the prosecution failed to exercise due diligence. *Eccles, supra* at 388. Here, the trial court did not make a due-diligence determination. Therefore, an instruction was not warranted.

Finally, defendant contends that his trial counsel was ineffective for failing to demand a due-diligence hearing. While defense counsel did not specifically request a hearing, he did raise the issue of the missing witnesses and he complained about Dunbeck's failure to appear. However, upon hearing Levalley's testimony about the efforts that he made to locate and serve subpoenas on Brittany and Latasha, defense counsel should have requested a due-diligence hearing as part of a sound trial strategy.

Regardless of counsel's performance, defendant has not shown prejudice. Defendant must show a reasonable probability that, but for his counsel's deficient performance, he would not have been convicted. *Snider, supra* at 424. Even if defense counsel had been successful at producing Brittany and Latasha, it is unclear whether their testimony would have been favorable to defendant. According to defense counsel, they would have testified that defendant was not the shooter. However, that testimony would have conflicted with Dixson's testimony that defendant was not at the Lounge when the shooting occurred. In addition, while Dixson testified that defendant was not at the Lounge when the shooting occurred, three witnesses, Cheatom, Wilson, and Turner, testified that defendant was the shooter, and Wilson was positive defendant was the shooter. Further, the trial court, upon hearing the recorded conversations of defendant from jail, stated that defendant sounded like he was "concocting a kind of defense and manipulating that with other persons who might be testifying in this case." FN2 Consequently, we hold that defendant has failed to show that but for his counsel's performance, the outcome of his trial would have been different. *Toma, supra* at 302-303.

FN2. Defendant contacted Scott and Wilson several times in jail in an attempt to

convince them that he was not the shooter.

*Poindexter*, 2007 WL 2847757 at *4-5.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Even assuming that trial counsel erred by not requesting a due diligence hearing or taking other action relative to the missing witnesses, Petitioner has not established that he was prejudiced by counsel's conduct. First, he has not shown that police and prosecuting authorities failed to act with reasonable diligence in attempting to locate the witnesses. The record reflects that the prosecutor was aware of the witnesses and had them listed as potential prosecution witnesses. The record also indicates that the police were attempting to find the witnesses to have them provide statements and/or appear for trial.

Second, and more importantly, Petitioner has not presented testimony or affidavits from the missing witnesses to show that they would have testified at trial and that their testimony would have been favorable to the defense. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).

While defense counsel indicated during the state court proceedings that he spoke to the witnesses and they would testify that Petitioner was not the shooter, counsel offered no specifics and provided no documentation to support his assertions. Such unsworn, speculative, hearsay

13

statements are insufficient to establish prejudice or justify habeas relief. *See, e.g., Herrera v. Collins*, 506 U.S. 390, 417 (1993) (hearsay affidavits in support of actual innocence claim are "particularly suspect"); *Teahan v. Almager*, 383 F. App'x 615 (9th Cir. 2010) (unsworn statements of purported alibi witnesses given to counsel were insufficient to show actual innocence); *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (a showing of *Strickland* prejudice "must be made based on the potential witness's testimony to the habeas court"); *Horton v. Allen*, 370 F. 3d 75, 81, n. 5 (1st Cir. 2004) (citing *United States v. Maguire*, 600 F.2d 330, 332 (1st Cir. 1979), and ruling that habeas counsel's affidavit which summarized conversations with defense counsel was hearsay and could not establish ineffective assistance claim); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony or affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (ineffective assistance is not shown if defendant fails to produce affidavit of uncalled witness); *see also Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007); *Dows v. Woods*, 211 F.3d 480, 486 (9th Cir. 2000).

Third, even if the witnesses had been located to testify or a missing witness instruction had been given, Petitioner still cannot prevail given the significant evidence of guilt presented at trial. Shooting victim Micah Wilson, his friend DeShawn Cheatom, and security guard Terrance Turner all testified that Petitioner was the shooter. Shooting victim Calvin Scott and Turner's cousin Myron Dunlap also provided testimony implicating Petitioner in the shooting. Additionally, while in custody, Petitioner contacted Scott and Wilson to try to convince them that he was not the shooter. Given such testimony, Petitioner has not shown that there is a reasonable probability that,

14

but for counsel's alleged errors, the result of the proceeding would have been different. He has thus failed to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

### V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability ("COA") must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the habeas claims. *Id*. at 336-37. When a federal court denies relief on procedural grounds without addressing the merits of a claim, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85. Having considered the matter, the Court concludes that Petitioner has failed to make a

substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling. Accordingly, the Court **DENIES** a certificate of appealability.

    **IT IS SO ORDERED.**

                              s/Lawrence P. Zatkoff
                              LAWRENCE P. ZATKOFF
                              UNITED STATES DISTRICT JUDGE

Dated: July 28, 2011

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 28, 2011.

                              s/Marie E. Verlinde
                              Case Manager
                              (810) 984-3290